JOHN GLYNN ET AL. V. THOMAS GLYNN ET AL.

FILED NOVEMBER 20, 1901. No. 11,191.

Commissioner's opinion, Department No. 1.

1. Resident Alien. A "resident alien," mentioned in section 25 of the bill of rights, is one who resides in the state of Nebraska.

2. Statute, Re-enactment of Common Law: PROVISO EXCEPTS PROPERTY IN TOWNS. Chapter 58 of the Session Laws of 1889, providing that non-resident aliens shall not inherit land in this state, is but the re-enactment of the common law; and the proviso of the act, that its provisions should not apply to any real estate lying within the corporate limits of cities and towns, is by implication a legislative determination that the common law doctrine of inheritance should not be applied to lands within the corporate limits of cities and towns.

ERROR from the district court for Lancaster county. Tried below before FROST, J. *Reversed.*

*Abbott, Selleck & Lane,* for plaintiffs in error.

*D. J. Flaherty* and *E. F. Pettis, contra.*

*T. J. Mahoney* and *James H. Van Dusen, amici curiae.*

DAY, C.

This action was brought in the district court for Lancaster county by John Glynn, Margaret Quinn, Honoria Mulchrone and John Gildea, against Thomas Glynn (insane), Robert Glynn, his guardian, Malachy Glynn, Patrick Gildea, James Gildea, Michael Gildea, Mary Ann Muldoon, Kate Muldoon, Nora Gildea, Delia Gildea, John S. Butler, administrator of the estate of Robert Glynn, deceased, and W. R. Scott, praying for a judgment confirming the shares of the respective parties in and to certain real estate, and for a partition of the real estate according to the respective rights of the parties interested. Upon the issues joined and the evidence, the court found in favor of Malachy Glynn and Thomas Glynn and Robert Glynn, as guardian of Thomas Glynn, and against each and all of the plaintiffs and against each and all of the other defendants, and decreed partition of the lands accordingly. From this judgment the plaintiffs and the defeated defendants have brought error to this court.

The question presented by the record arises out of the following facts: Robert Glynn resided for a great many years immediately prior to his death in Lancaster county, Nebraska. He died March 26, 1897, seized in fee of certain land situated and lying within the corporate limits of the village of Bethany Heights, Lancaster county, Nebraska. This land, which now forms the basis of this controversy, had been owned by the deceased since January, 2, 1884. Robert Glynn died intestate, without issue or father or mother living. The parties to this controversy are the brothers and sisters of deceased and the children of a deceased sister. Two of the brothers, viz., Thomas and

Malachy, are citizens of the United States; Thomas residing in the state of Ohio, and Malachy residing in the state of New York. Another brother, John, and two sisters, viz., Honoria Mulchrone and Margaret Quinn, were subjects of Great Britain, and resided in Ireland. The other claimants, John, Patrick, James, Michael, Nora, and Delia Gildea and Mary Ann and Kate Muldoon, resided in Illinois and are the children of Maria Gildea, a sister of the deceased, who was a subject of Great Britain, and died in 1895. The record also discloses that Robert Glynn, deceased, was an alien; but, in view of our constitutional provisions respecting alien residents, that fact is not of importance. The precise question presented by the record relates to the capacity of aliens to inherit real estate situated within this state and located within the corporate limits of cities and towns.

Section 25 of the bill of rights provides as follows: "No distinction shall ever be made by law between resident aliens and citizens in reference to the possession, or descent, of property." The words "aliens" and "citizens," as used in this section of the bill of rights, relate to the political status of persons as respects their relation to the United States, while the word "resident" immediately preceding the word "aliens" relates to the status of persons with respect to the state of Nebraska. Thus, a subject of Great Britain who lived in Nebraska would be a "resident alien," within the meaning of this phrase in the bill of rights, whilst, had he resided in Illinois, he would not have been a resident alien. Under the provisions of this section, Robert Glynn, deceased, was authorized to own and acquire real estate in this state, and the same would descend to his heirs under the same limitations and restrictions as though he had been a citizen of the state. There is nothing in this section alone which confers any rights of inheritance upon such of the brothers and sisters of the deceased who at all times were subjects of the Queen of Great Britain, and resided in Ireland; neither does it confer any rights upon the chil-

dren of Maria Gildea, who resided in the state of Illinois, and who, if they inherit at all, must trace their pedigree through their mother, an alien. The construction to be placed upon this section in so far as it applies to the facts of the present case, is that the law makes no difference as to the right of inheritance between persons who are citizens of the United States and aliens who are residents of this state. There was nothing in the early legislative policy of the state prohibiting aliens, whether resident or non-resident, from acquiring and holding real estate situated in this state by purchase, devise or descent. In this respect. aliens were accorded the same freedom as a citizen. The Revised Statutes of 1866, chapter 43, section 59, which continued to be the law of this state until 1887, provided as follows: "Any alien may acquire and hold real estate, or any interest therein, by purchase, devise or descent, and he may convey, mortgage and devise the same, and if he shall die intestate, the same shall descend to his heirs; and in all cases such real estate shall be held, conveyed, mortgaged or devised, or shall descend in like manner and with like effect as if such alien were a native citizen of the United States." In 1887, the above quoted section of the statute was repealed and chapter 62 of the Laws of 1887 was enacted, which provided as follows: "No non-resident alien shall hereafter acquire or hold any real estate or interest therein in the state of Nebraska by purchase, devise or descent." There was a proviso, however, that any alien who then owned real estate might convey, mortgage or devise the same, or if he should die intestate the same should descend to his heirs in like manner as if such alien were a native citizen of the United States. There was also enacted by the legislature of 1887, chapter 65 of the Laws of 1887, which was approved upon the same day as chapter 62, above quoted. The substance of this act was that no non-resident alien foreigner who has not declared his intention to become a citizen of the United States, nor any corporation not incorporated under the laws of this state, shall acquire, own or hold by

right, title or descent, accruing hereafter, any real estate in this state; provided, that the act should not apply to real estate necessary for the construction of railroads: and provided that, if any non-resident alien, who was the owner of real estate at the time of the passage of the act, should die, his lands which would have descended to his heirs, shall escheat to the state, and also provided for the appraisement of such lands and the payment of their value to such heirs as otherwise would have inherited the same.  In 1889 both of the acts of 1887 were repealed and chapter 58 of Session Laws of 1889 was enacted, which is still in force.  The act of 1889 provides that non-resident aliens and corporations not incorporated under the laws of this state are prohibited from acquiring or holding any lands or real estate in this state by descent, devise, purchase or otherwise, and contains this proviso: "And provided further, that the provisions of this act shall not apply to any real estate lying within the corporate limits of cities and towns."  As we view it, the provisions of the act of 1889, as applied to lands outside of the corporate limits of cities and towns, was but the re-enactment of the common law doctrine that an alien could not take land by descent.  True, it went further, and prohibited the acquisition by purchase or otherwise.  The proviso specially provides that the act shall not apply to lands within the corporate limits of cities and towns, and, by implication at least, is a legislative declaration that lands within the corporate limits of cities and towns should remain unaffected by the common law doctrine of inheritance, and that the general law of descent should apply.  If this were not the intention of the legislature, we would have the anomalous condition of a statute prohibiting non-resident aliens from taking real estate in this state outside of the corporate limits of cities and towns, with a proviso that it had no application to lands lying within cities and towns, and a common law prohibiting aliens from taking by descent lands in cities and towns.  The effect of this would be to render nugatory the proviso declaring that

the act should not apply to lands within cities and towns. It seems to us clear that the limitation upon the power of non-resident aliens to acquire land by purchase, devise or descent, applies only to lands situated without the corporate limits of cities and towns, and that, by fair implication, lands within the corporate limits of cities and towns should remain unaffected by the common law doctrine on the subject.

From these observations it follows that the brothers and sisters of the deceased, or their descendants, whether they be aliens or citizens, and wheresoever they may reside, are entitled to their respective shares in the property of the deceased. It is therefore recommended that the judgment be reversed and the cause remanded with direction to enter judgment in favor of all the respective claimants, each in proportion to his respective share as indicated by this opinion, or, if the land can not be partitioned, that it may be sold and the proceeds divided.

HASTINGS and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion the judgment of the district court is

REVERSED AND CAUSE REMANDED.