STATE, EX REL. WILLIAM TOOP ET AL., APPELLANTS, V. ALBERT V. THOMAS, COUNTY ATTORNEY, APPELLEE.

FILED FEBRUARY 1, 1919. No. 20210.

1. **Aliens:** INHERITANCE: ESCHEAT. Under sections 6273, 6274, Rev. St. 1913, nonresident aliens cannot inherit title nor right of possession of lands in this state; but, the same must be forfeited to the state as provided in those sections.

2. **Mandamus:** PARTIES: FORFEITURE OF LANDS. It is the duty of the county attorney of the county in which the lands lie to proceed under the statute to forfeit the lands to the state, and, if he refuses or neglects to do so, such nonresident alien heirs may enforce such action by mandamus.

3. **Escheat:** RIGHTS OF NONRESIDENT ALIENS. When lands of a decedent, from whom such aliens would inherit if residents of the state, are so forfeited to the state, they are entitled to the value of such portion as they would, if residents, inherit; such value to be ascertained as provided in the statute.

APPEAL from the district court for Butler county: GEORGE F. CORCORAN, JUDGE. *Reversed, with directions.*

. *Crane, Boucher & Sternburg* and *Bulkley, More & Tallmadge,* for appellants.

*R. C. Roper, C. M. Skiles* and *A. V. Thomas, contra.*

SEDGWICK, J.

John Toop, a resident of Butler county, in this state, died, leaving a widow and no children. At the time of his death, he was the owner of a farm in that county. Some time after his decease his widow also departed this life, and these relators, who are his nieces and nephews, being children of a deceased brother and

sister, and are residents of Great Britain, began this action in mandamus in the district court for Butler county, to require the respondent, as county attorney of that county, to proceed under article V (secs. 6272-6276), Rev. St. 1913, relating to escheats, to forfeit to the state the title in this land. The respondent filed a general demurrer to the petition, which was sustained by the court, and the action dismissed; and the relators have appealed to this court.

There is no contention but that the petition alleges facts sufficient to require the determination of the question whether the relators as nonresident aliens have any interest in the real estate in question, or in the proceeds thereof when the title is forfeited to the state. Section 6273, Rev. St. 1913 provides: "Nonresident aliens and corporations not incorporated under the laws of the state of Nebraska are hereby prohibited from acquiring title to or taking or holding any lands or real estate in this state by descent, devise, purchase, or otherwise, only as hereinafter provided; * * * it shall be the duty of the county attorney in the counties where such lands are situated to enforce forfeitures of all such lands as provided by this article." The next section, 6274, Rev. St. 1913, repeats the provision that it shall be the duty of the county attorney to proceed to forfeit the title to the state, provides how the action shall be begun and summons shall be served "upon the nonresident alien defendants," and continues: "And the court shall have power to hear and determine the questions presented in such cases and to declare such lands escheated to the state. * * * The heirs or persons who would have been entitled to such lands shall be paid by the state of Nebraska the full value thereof, as ascertained by appraisement upon the oaths of the judge, treasurer and clerk of the county where such lands lie, and such lands shall then become subject to the law, and shall be disposed of as other lands belonging to the state. * * * The

widow, heirs and devisees, or either of them, of deceased nonresident aliens, may,  *  *  *  instead of the for-feiture herein provided for, have the lands sold as in partition" and in such case the land shall be sold and the proceeds "shall be divided according to the respective interests of the parties the same as if there had been no escheat."

Under these provisions such nonresident alien heirs do not acquire the legal title to the land, and cannot take or hold the land, that is, they cannot enforce pos-session of the land. But when the county attorney has performed his duty, and the lands are sold as in parti-tion, they take their portion of the proceeds "according to the respective interests of the parties." The heirs of this estate, or some of them, have been interested in several actions in which they attempted to assert title in this land, and have failed because under this statute they cannot by descent take title nor right of possession. This article V was enacted in 1889 (Laws 1889, ch. 58); and former acts in regard to interests of nonresident aliens in real estate were by that act re-pealed. Since the enactment of that statute, there have been several decisions of this court in which the statute was referred to and some of its provisions were con-strued. In *Glynn v. Glynn,* 62 Neb. 872, the provision of the statute that "the provisions of this act shall not ap-ply to any real estate lying within the corporate limits of cities and towns" was construed, and it was held that nonresident alien heirs could inherit the title to real estate situated in cities and towns, and that a resident alien within the meaning of the Constitution was one who resides in the state of Nebraska. What in-terest they would take in lands in the state not in cities and towns was not involved in the case, but the opinion recited that they were "prohibited from acquiring or holding any lands or real estate in this state by descent, devise, purchase, or otherwise" which is strictly true so far as acquiring by descent the title or right of posses-

sion of lands. In *Dougherty v. Kubat,* 67 Neb. 269, the same question was involved as to the right to in- herit the title and right of possession of lands situated in corporate limits of cities and villages, and *Glynn v. Glynn, supra,* was followed and adhered to. In neither of these cases was anything involved or even stated in regard to the right of these heirs to have the title transferred to the state and be paid the value thereof, as provided in the act. In the more recent case, brought by some of the heirs of John Toop (*Toop v. Palmer,* 97 Neb. 802), the judgment of the district court was affirmed, in which it was held that the resident heirs of John Toop, who could inherit the legal title and right of possession, could maintain an action to set aside a deed which they had been induced to execute upon the false representations that the alien nonresident heirs had the same rights of inheritance and possession that they themselves had. There is perhaps some language in that opinion that might be considered as derogatory to the rights of these parties to the relief herein de- manded, but nonresident aliens, who are not parties to that proceeding, would not be bound by such ex- pressions, particularly as they do not seem to have been necessary to the decision in that case. In *Glynn v. Glynn, supra,* it was held that the proviso in the statute, that it should not apply to lands within cities and towns, "by implication at least, is a legislative declaration that lands within the corporate limits of cities and towns should remain unaffected by the com- mon-law doctrine of inheritance, and that the general law of descent should apply." By the same reasoning the provision of the statute that they should take no interest "only as hereinafter provided," and that the lands should be sold and the proceeds "divided ac- cording to the respective interests of the parties the same as if there had been no escheat," is, by implica- tion at least, the legislative declaration that the right to the value of the "respective interests" "should re-

main unaffected by the common-law doctrine of inheritance," and that so far the general law of descent should apply.

The county attorney should have proceeded under the statute to forfeit the title and right of possession to the state, and the judgment of the district court is reversed and the cause remanded, with instructions to allow all persons claiming any interest in the lands to become parties to the proceedings, and to ascertain their interests, and, at the request of any interested party, proceed as in actions for partition, and enter judgment accordingly; the costs now incurred to be paid by the parties incurring them, and subsequent costs to abide the result as in partition.

REVERSED.

LETTON and ALDRICH, JJ., not sitting.

The following opinion on motion for rehearing was filed May 17, 1919. *Rehearing denied.*

PER CURIAM.

In the briefs upon the motion for rehearing it is assumed that chapter 58 of the Laws of 1889 has no application to nonresident alien heirs of a resident of this state. The first section of the act applies to all nonresident aliens, and provides that they shall not take or hold lands by descent. So far as they are prevented from inheriting, their rights would, of course, revert and escheat to the state; and the purpose of the act is to provide for such cases where the rights of nonresident alien heirs revert and escheat to the state. And, so, the nonresident alien heirs of a resident of the state are in the same position as are such heirs of a nonresident of the state. It would be strange indeed if the legislature had intended to discriminate against the heirs of a resident and in favor of the heirs of a nonresident. "No distinction shall ever be made by law between resident aliens and citizens in reference to the possession, enjoyment or descent of property." Const., art. I, sec. 25. And, so, in *Glynn v. Glynn*, 62

Neb. 872, it is said: "The record also discloses that Robert Glynn, deceased, was an alien; but, in view. of our constitutional provisions respecting alien residents, that fact is not of importance."

The motion for a rehearing is

OVERRULED.

LETTON, J., not sitting.