State v. Toop.

STATE OF NEBRASKA, APPELLANT, V. WILLIAM TOOP ET AL., APPELLANTS: GEORGE H. STINE ET AL., APPELLEES.

FILED JANUARY 13, 1922.    No. 21861.

1. **Aliens: INHERITANCE.** Where a citizen of the United States, who at the time of his death was the owner of a tract of farm land not within any of the exceptions of section 6276, Rev. St. 1913, dies intestate, leaving as his next of kin two nieces who were

citizens of the United States, and three nephews who were non-resident aliens residing in England, and subjects of the Kingdom of Great Britain and Ireland, there being no treaty between the United States and the Kingdom of Great Britain and Ireland affecting the question, *held*, that the provisions of section 6273, Rev. St. 1913, preclude the three nephews from acquiring any title or interest in such lands, and that the entire estate in the land vested in the two nieces who were residents and citizens of the United States.

2. ———: ———. The exception in section 6273, Rev. St. 1913, giving to the widow and heirs of aliens who have acquired lands in this state prior to March 16, 1889, the right to hold such lands by devise or descent for a limited period, and providing a method for escheating such lands, has no application where the deceased landowner was a citizen of the United States.

3. **Case Overruled.** The decision in *State v. Thomas*, 103 Neb. 147, in so far as it is contrary to the views herein expressed, is overruled.

APPEAL from the district court for Butler county: GEORGE F. CORCORAN, JUDGE. *Affirmed.*

*A. V. Thomas, Crane, Boucher & Sternberg* and *Bulkley, More & Tallmadge,* for appellants.

*Matt Miller, Doyle & Halligan* and *Tinley, Mitchell, Pryor, Ross & Mitchell,* contra.

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN, DAY and FLANSBURG, JJ., SEARS and WESTOVER, District Judges.

DAY, J.

The ultimate question which we are called upon to determine in this case is whether, under the facts presented by the record, certain nonresident aliens, residing in England, kin of one John Toop, deceased, have any interest in certain land in this state owned by said John Toop at the time of his death.

A brief statement of the facts, at this time, which have given rise to the several proceedings involving the real estate in question may serve to a clearer understanding of the questions hereinafter discussed.

John Toop, a citizen of the United States and a resident of Butler county, Nebraska, for many years, died at his home intestate on July 28, 1898. At the time of his death he was the fee simple owner of the S. ½ of the S. W. ¼ of section 30, township 13, range 2 east of the sixth P. M.; also the N. ½ of the N. E. ¼ of section 36, township 13, range 1 east of the sixth P. M., in Butler county, Nebraska. He acquired the title to this land March 9, 1889. It was not obtained under any lien or mortgage, was not used for railroad or manufacturing purposes, and was not within the corporate limits of any city or town, but was exclusively farm land. He also owned at the time of his death considerable other property not necessary to mention, as it is not now the subject of controversy. He left surviving him his widow, Sarah Jane Toop, who, under the law as it then stood, took a life estate in the land. She remained in possession of the land under her homestead right until her death on November 9, 1907. John Toop left no children or descendants of children, no father or mother, brother or sister. He was survived, as his next of kin, by two nieces, Sarah Jane Dyer and Emma Tremlin, who were the surviving children of Mary Ann Plowman, a predeceased sister of said John Toop. Both of these nieces were residents and citizens of the United States, and were the only next of kin of said John Toop residing in the United States. He was also survived by William and John Toop, surviving sons of William Toop, a predeceased brother of said John Toop, and also by Robert Orchard, a surviving son of Betsy Orchard, a predeceased sister of said John Toop. William Toop, John Toop, and Robert Orchard, above mentioned, were subjects of the Kingdom of Great Britain and Ireland, and resided in England. These two nieces and three nephews stood in the same degree of relationship to John Toop, and would, under our law of descent, inherit the land in question in equal proportion, subject to the life estate of the widow, unless the fact of alienage of the English kin is a bar to their

taking any interest in the land. In the course of the litigation the names of several grandnieces and grand-nephews of John Toop, some of whom are residents and citizens of the United States, appear as claimants to a portion of this land; but, as they took no interest under our statute of descent, no further reference need be made to them. For construction of our law of descent covering this precise situation, see *Douglas v. Cameron,* 47 Neb. 358. It appears, however, that, since the death of John Toop, Robert Orchard, hereinbefore mentioned, has died, and, of course, his survivors would succeed to whatever interest their ancestor may have had. For the purpose of convenience the nonresident alien claimants will be referred to hereinafter as the English kin. It appears further that Sarah Jane Dyer and Emma Tremlin sold the land in question to George H. Stine, who has been in possession thereof for a number of years, has made valuable improvements thereon, and has mortgaged the land to the Mutual Benefit Life Insurance Company. Under this state of facts, an action in mandamus was brought by a group of the English kin, headed by William Toop, against A. V. Thomas, county attorney of Butler county, to compel him to proceed under the provisions of sections 6272-6276, Rev. St. 1913, to escheat that portion of the title to the land claimed by the English kin. That case was ultimately brought to this court, where the writ was allowed. *State v. Thomas,* 103 Neb. 147. In obedience to our mandate the present action was commenced in the name of the state of Nebraska to forfeit and escheat to the state that portion of the title to the land which the English kin would have inherited had each not been a nonresident alien; and it was also prayed that the value of such interest be determined in the manner provided by law and paid to the English kin. All persons who had or claimed any interest in the land were made parties defendant, and each by their respective answers and cross-petitions set up their respective claims. An issue was thus tendered whether the English kin had

any interest at all, beneficial or otherwise, in the lands in question. It was adjudged by the trial court that the English kin took no title, right or interest in the land; that no part thereof escheated to the state of Nebraska; and the cross-petitions of the English kin and the claim of the state were dismissed. The court also adjudged that the entire title to the land, upon the death of John Toop, vested in Sarah Jane Dyer and Emma Tremlin, subject only to the life estate of Sarah Jane Toop, the widow; that by mesne conveyances of Sarah Jane Dyer and Emma Tremlin, and the death of Sarah Jane Toop, the entire title to the land in question became merged in George H. Stine to the exclusion of all the parties, save only the mortgage lien of the Mutual Benefit Life Insurance Company, and, subject to this lien, quieted and confirmed the title to the land in George H. Stine. From this judgment the English kin have appealed.

At the time of the death of John Toop, there was no treaty between the United States and the Kingdom of Great Britain and Ireland, so that the question presented must be determined by the provisions of our statute unaffected by treaty rights.

As before stated, the action was bottomed upon the provisions of sections 6273 and 6274, Rev. St. 1913, relating to the subject of escheats, which, in so far as such provisions affect the question in hand, may be said to be identical with chapter 58, Laws 1889. The changes which have been made affect only questions of procedure. Prior to the act of March 31, 1887, Laws 1887, ch. 62, the legislative policy of the territory, as well as the state, had been to make no distinction between citizens and aliens, whether resident or nonresident, with respect to their right to hold and acquire real property in the state by purchase, devise or descent. At that time, however, restrictions were commenced to be enacted. Section 1, ch. 58, Laws 1889, being section 6273, Rev. St. 1913, is as follows:

"Nonresident aliens and corporations not incorporated

under the laws of the state of Nebraska, are hereby prohibited from acquiring title to or taking or holding any lands or real estate in this state by descent, devise, purchase or otherwise, only as hereinafter provided, except that the widow and heirs of aliens who have heretofore acquired lands in this state under the laws thereof, may hold such lands by devise or descent for a period of ten years and no longer, and if at the end of such time herein limited such lands so acquired have not been sold to a *bona fide* purchaser for value, or such alien heirs have not become residents of this state, such lands shall revert and escheat to the state of Nebraska, and it shall be the duty of the county attorney in the counties where such lands are situated to enforce forfeiture of all such lands as provided by this act."

The second section of the act provides the method of procedure in case lands are escheated to the state under the provisions of the act, directs that the county attorney in the county where the land is situated shall proceed to have the title to the land forfeited to the state, that when so forfeited the lands shall be appraised, and that "the heirs or persons who would have been entitled to such lands shall be paid by the state of Nebraska the full value thereof as ascertained by appraisement," less the expense of the appraisal. Section 3 of the act provides:

"Any nonresident alien who owns land in this state at the time this act takes effect may dispose of the same during his life to *bona fide* purchasers for value, and may take security for the purchase money with the same rights as to securities as a citizen of the United States."

Section 4 of the act provides that nothing in the act shall prevent the holders, whether nonresident aliens or corporations not organized under the laws of the state, of liens upon real estate, whether heretofore or hereafter acquired, from taking or holding a valid title under such liens or from becoming a purchaser at any sale for the purpose of enforcing such liens, but provides that lands so acquired shall be sold within ten years, and in default

of such sale the lands shall revert and escheat to the state of Nebraska, as provided in the act. It also exempts from its operation all "real estate necessary for the construction and operation of railroads;" "so much real estate as shall be necessary for the purpose of erecting and maintaining manufacturing establishments;" and "any real estate lying within the corporate limits of cities and towns." There is no contention that the lands in question are within any exception or proviso as set out in sections 3 and 4 of the act; so that the rights of the English kin, if any, under this act must rest upon the interpretation to be given to sections 1 and 2 thereof.

It will be observed that in the very beginning of the act, by plain, clear and unequivocal language, nonresident aliens and corporations not incorporated under the laws of this state are prohibited from acquiring title to, or taking or holding, any lands or real estate in this state by descent, devise, purchase or otherwise. The meaning of this sweeping language is so plain that no argument is necessary to elucidate it. Following this language, there is an "exception" and a "proviso." We have heretofore stated that the English kin make no claim that their rights are predicated upon any of the "provisos" of the act. Do they come within the "exception" clause of the act? The exceptions to the general prohibition is that the widow and heirs of aliens, who before the taking effect of the act had acquired title to lands in the state, are permitted to take such lands by devise or descent, and to hold the same for a period of ten years, and no longer, and if at the expiration of that time the widow and heirs of such aliens have not disposed of their land, or have not become citizens of the United States, then, under the provisions of the act, the lands escheat to the state, but the state is required to pay to the persons entitled to such lands the appraised value thereof.

It will not escape notice that the exception clause of the act refers only to the "widow and heirs of aliens." But in this case John Toop was a citizen of the United

States. It is difficult to see how by any process of reasoning or fair interpretation of the language of the act it can be extended to include the widow and heirs of citizens. Certainly to do so is to read into the act words which are not there. While no doubt the act should receive a liberal interpretation, yet this license does not warrant us in indulging in judicial legislation. We can find no judicial basis for construing the act so as to give the nonresident alien kin of a deceased citizen the right to take any interest in his lands, which are not within the provisos of the act. The argument that while the English kin may not take the title to the land they nevertheless take a "beneficial interest" is fallacious. It is plausible only because it is not clear why the legislature should have drawn a distinction between the nonresident alien heirs of an alien then holding land and the nonresident alien heirs of a citizen. In *Wunderle v. Wunderle,* 144 Ill. 40, an almost identical statute with our own was under consideration, and it was said:

"It is urged that the act of 1887 should be liberally construed, and that such liberal construction would have the effect of extending the exception named in section 1 to the alien heirs of citizens, as well as to the heirs of aliens. In other words, we are asked to so construe the exception as to give the nonresident alien kindred of citizens the right to take lands by descent or devise, and hold the same for three or five years so as to make sale, or acquire an actual residence in the state. This would involve the insertion of the words 'and the alien heirs of citizens' after the words, 'except that the heirs of aliens.' By such a construction we would make the legislature say what it has not said. It is not the province of the judiciary to make laws, but to construe and interpret them and pass upon their validity. * * * But, here, the legislature has expressly declared that the heirs of certain aliens shall take and hold lands for limited periods subject to the privilege of avoiding their escheat to the state by a sale of them, or by acquiring an actual

residence in the state, within said periods. But the act of 1887 nowhere declares, nor is there anything on its face to indicate that the legislature intended thereby to declare, that the nonresident alien kindred of citizens should so take and hold lands for certain periods."

This same statute was construed in an action brought by the English kin headed by William Toop against the Ulysses Land Company, and others, in the district court of the United States for the district of Nebraska, in an action of ejectment involving this same land. In a memorandum opinion by Judge Thomas C. Munger, before whom the case was tried, after quoting the provisions of the act, it is said:

"It is contended that this statute should be construed so that it would read as if the words 'or citizens' were inserted in the exception, making the exception clause to read, 'except that the widow and heirs of aliens or citizens who have heretofore acquired lands in this state,' etc. The statute as it exists is not open to such an interpretation." The opinion concludes: "As the plaintiffs are nonresident alien heirs of a citizen, the statute forbade their inheritance of the lands in controversy, and judgment will be entered for the defendants."

What, then, becomes of that portion of the estate which the nonresident aliens would have inherited but for their alienage? The rule seems to be well established that, if a citizen dies and his next heir is an alien who cannot take, the alien cannot interrupt the descent to others who do not claim through him, but the inheritance descends to those next of kin who are competent to take in like manner as though the alien kin had never existed. *King v. Ware,* 53 Ia. 97; *Pierson v. Lawler,* 100 Neb. 783.

But it is insisted by the English kin that the decision in *State v. Thomas,* 103 Neb. 147, has become the law of the case, and is decisive of the question now before the court, and that the trial court erred in failing to follow the interpretation placed upon the statute in question in that case. It would seem a sufficient answer to that con-

tention that the parties are different in that case from those in the case at bar. It is quite true that, in issuing the writ of mandamus, it was based upon an interpretation of the statute which made it the duty of the county attorney to begin proceedings to escheat the land. But we now conclude that our interpretation of the statute in that case was wrong, and, in so far as it is at variance with the views herein expressed, it is disapproved.

On the other hand, it is claimed by the appellees that the decision of *Toop v. Palmer*, 97 Neb. 802, and *Toop v. Ulysses Land Co.*, 237 U. S. 580, are decisive of the case in their favor. Inasmuch as we have reversed our former interpretation of the statute, it would seem unnecessary to discuss this contention of the appellees.

It follows from this discussion that the judgment of the district court is right, and it is, therefore,

AFFIRMED.

Aldrich, J., not sitting.