WILLIAM I. TOOP ET AL., APPELLANTS, V. FRANK PALMER ET AL., APPELLEES.

FILED JUNE 28, 1922. No. 20805.

1. **Action:** MUTUAL ACCOUNTS. Where the pleadings as a whole, in an action wherein the jury is waived, present mutual accounts for a court of equity to adjust with a view to the termination of protracted and complicated litigation, the case may be tried and determined as a suit in equity.

2. **Parties:** NEW PARTIES. In a suit in equity, the trial judge on his own motion may bring into court a party necessary to a determination of the issues.

3. ———: DISMISSAL. Defendants who have pleaded facts entitling them to affirmative relief cannot be eliminated from the case by a mere dismissal as to them by plaintiffs.

4. **Judgment:** CONCLUSIVENESS. A question once determined in a case by a judgment on the merits is settled and cannot be relitigated in a subsequent suit between the same parties.

5. **Deeds:** CANCELATION: RIGHTS OF GRANTEE IN POSSESSION. In a proper case, defendants who are required to account for rents, while in possession of a farm under deeds canceled for fraud, may be allowed equitable credit for taxes and interest paid, for reducing liens, and for improvements made.

6. **Judgment:** SUFFICIENCY OF PETITION. A petition alleging as a mere conclusion that defendants by conspiracy and fraud cheated plaintiffs out of the rents of a farm for two years, while defendants, as shown by the petition itself, had no lease and no title and were not in possession, without stating any facts to show how the cheating was done or how defendants procured rents belonging to plaintiffs, will not support a judgment in favor of plaintiffs for such rents.

7. **Deeds:** CANCELATION: ACTION FOR RENTS: ACCOUNTING: INTEREST. In a supplemental action to recover rents, as the fruits

of a former suit to cancel fraudulent deeds executed by plaintiffs
to defendants, plaintiffs may be required to account for interest
which they received from a third person on money deposited by
them in court for defendants, pending an appeal, as the consider-
ation for the canceled deeds.

8. **Damages:** Attorney's Fees: Expenses. In the absence of stat-
ute, attorney's fees and other expenses of litigation are not re-
coverable as elements of damage for the wrongs of grantees who
procure deeds to land by fraud and force the grantors into a court
of equity to restore their title.

Appeal from the district court for Butler county: Ed-
ward E. Good, Judge. Affirmed.

C. M. Skiles and R. C. Roper, for appellants.

Hastings & Coufal and Thomas, Vail & Stoner, contra.

Heard before Morrissey, C. J., Rose, Aldrich and Day,
JJ., Redick, District Judge.

Rose, J.

This is an action by plaintiffs to recover from defend-
ants rents, expenses of former litigation, and attorneys'
fees, aggregating $11,821.86. The parties do not agree on
the nature of the suit. Plaintiffs contend they brought
an action at law to recover damages for fraud and con-
spiracy. Defendants insist that the suit is one in equity
to adjust mutual accounts, that they pleaded equitable de-
fenses, and that the issues were determinable under the
rules of equity. The parties waived a jury. The trial
judge proceeded to bring in a new party on his own mo-
tion and to determine the pleas of all litigants according
to equitable principles. As a result the balance due plain-
tiffs, instead of $11,821.86, as claimed by them, was found
to be $1,276. From a judgment in favor of plaintiffs for
the latter sum, they have appealed.

Whatever the nature of this suit may be, plaintiffs are
seeking to recover some of the fruits of former litigation
which must be considered in connection with the claims
now presented.

In a former suit in equity the title and possession of a

quarter section of farm land in Butler county, valued at
$20,000, were subjects of litigation. John Toop owned
the land. He died intestate July 28, 1897, leaving as his
next of kin two nieces, residents of the United States, and
three nephews, nonresident aliens, residing in England.
The title descended to the resident heirs at law. The Eng-
lish kin took no interest whatever, because a Nebraska
statute prohibited them from inheriting farm land in Ne-
braska. Except for the disqualification of alienage they
would have inherited an undivided two-thirds interest.
John Toop left a widow who had a life estate only. She
died November 9, 1907. Thereafter the resident heirs of
John Toop owned the fee and were legally entitled to pos-
session. At first they did not know their rights and had
an erroneous impression that their English kin owned
two-thirds of the farm. In this state of affairs the legal
title was transferred to Frank Palmer, who acted for him-
self and also for his associates, Alfred R. Palmer, Reed
Rihart and H. L. Pence. The Palmers, Rihart and Pence
afterward incorporated in the name of the Ulysses Land
Company, to which the legal title acquired by Frank
Palmer was conveyed. The latter, in negotiating for the
land, among other inducements, had represented that he
would have to buy the interests of the English kin to pro-
cure John Toop's title to the farm. Whether this was
a well-grounded observation from a legal standpoint en-
gaged the attention of this court in protracted litigation.
The opinion was once judicially expressed that the Ne-
braska statute did not prevent the English kin from in-
heriting two-thirds of the land. *State v. Thomas*, 103
Neb. 147. The tide of litigation eventually changed, how-
ever, and it was finally determined that the English kin
took no title and that the title to the farm land owned by
John Toop descended to his two resident heirs at law.
*State v. Toop*, 107 Neb. 391.

Before the question of descent was presented for adjudi-
cation, Frank Palmer procured, through the two resident
heirs of John Toop, for $5,000, the legal title to the farm,

valued as it was at $20,000. The deed conveying to him an undivided one-half of the land owned by one of the resident heirs was executed by William I. Toop January 25, 1909, and the deed conveying the other undivided one-half was executed by Emily Tremlin January 27, 1909. Shortly after the execution of the deeds described, Frank Palmer went into possession for himself and his associates. Acting for himself and them, he conveyed the legal title August 30, 1909, to the Ulysses Land Company, a corporation which they organized and controlled. The corporation mortgaged the land to the Northwestern Mutual Life Insurance Company January 25, 1910, for $6,000. June 9, 1911, William I. Toop and Emily Tremlin, the two grantors who had conveyed the legal title to Frank Palmer, commenced a suit in equity to cancel their deeds; to cancel the mortgage; to recover $1,000, the difference between the consideration of $5,000 paid by Frank Palmer and the mortgage lien of $6,000; to recover the rents for the years 1907, 1908, 1909, 1910, and 1911. In that suit in equity the deeds were canceled subject to the lien of the mortgage. William I. Toop and Emily Tremlin were ordered to pay into court to be applied on the mortgage the consideration of $5,000 paid by Frank Palmer. They recovered a judgment for $1,400, the rents for 1909, 1910, 1911. The decree in equity containing these orders and judgments was reviewed by the supreme court and affirmed. *Toop v. Palmer,* 97 Neb. 802.

Settlement of the controversies between the resident heirs and Frank Palmer and his associates was further delayed by litigation to determine whether the interest which, except for the disqualification of alienage, would have descended to the English kin escheated to the state of Nebraska; but, as already stated, this phase of the controversy resulted in the final determination that the title to the farm land of John Toop was inherited by his resident heirs at law. *State v. Thomas,* 103 Neb. 147; *State v. Toop,* 107 Neb. 391.

In the present suit the plaintiffs are William I. Toop

and Emily Tremlin. They named as defendants Frank Palmer and his associates, Alfred R. Palmer, Reed Rihart and H. L. Pence. · The latter was not summoned. The presiding judge, on his own motion, brought in as a party defendant the Ulysses Land Company.

The claim of plaintiffs herein consists of four items: (1) Rents for the farm for the years 1907 and 1908; (2) rents for the farm subsequent to the decree canceling the deeds, pending appeal, including the years 1912, 1913, 1914, and 1915; (3) share of urban property rents not recovered in the suit to cancel the deeds; (4) expenses of former litigation $900, and attorneys' fees therefor $4,500; total recovery sought $11,821.86.

The answers of defendants contain pleas in equity admitting the collection of rents for the farm lands for the years 1912, 1913, 1914; alleging payment of taxes, payment of interest on the mortgage, partial payment of the mortgage debt, payment for the expenses of repairs and improvements, specifying the items; seeking credit for such payments; and praying for an accounting in equity.

In determining the issues the district court applied the rules of equity to the claims of all litigants, charged defendants with the rents and gave them credit for payments, expenses and improvements.

The mere statement of the case is perhaps sufficient to show that the trial court did not err in treating the litigation as a suit in equity. There was a dispute over some of the items of rent pleaded by plaintiffs. The credits demanded by defendants, consisting of many items, were controverted. Plaintiffs are seeking to recover fruits of a former proceeding in equity. Equitable defenses are pleaded. The items of rent are of the same nature as rents recovered in the equitable action to cancel the deeds. In respect to the rents the present suit is supplemental to the former. Except for the original adjudication in equity the recovery of rents herein would be denied. Part of the relief now sought was demanded in the former equitable action. Some of the new items are based on the identical

equities established by plaintiffs in the original suit. Reduced to the final analysis the pleadings present mutual accounts for a court of equity to adjust with a view to the termination of protracted and complicated litigation.

It is asserted that the presiding judge erred in bringing into the case on his own motion as a party defendant the Ulysses Land Company. It is a corporation and there is nothing to show that its corporate existence had been terminated in any manner. It is the mortgagor that borrowed $6,000 on the strength of the title conveyed by plaintiffs to Frank Palmer. As to the lien of that mortgage the deeds of plaintiffs were not canceled in the original suit. The Ulysses Land Company collected rents and paid taxes, interest and part of the mortgage debt. For the purpose of settling this controversy and terminating litigation it was a necessary party. In a suit in equity the trial judge on his own motion had authority to make it a party defendant. Rev. St. 1913, sec. 7604; *Kaplan v. City of Omaha,* 100 Neb. 567.

It is further argued that the trial court erred in denying plaintiffs the right to dismiss the action as to defendants Alfred R. Palmer and Reed Rihart. These defendants joined in an answer in which they pleaded facts entitling them to affirmative relief. In this condition of the pleadings plaintiffs did not have the right to eliminate them as litigants. Rev. St. 1913, sec. 7656; 18 C. J. 1159, sec. 32; *Adams v. Osgood,* 55 Neb. 766.

An item challenged as erroneously allowed in favor of defendants was a payment of $250 on the mortgage debt. Though the original decree, canceling the deeds executed by plaintiffs, directed them to pay into court the consideration of $5,000 to apply on the mortgage for $6,000, the mortgage lien remained in force. The decree was superseded pending appeal. Under a threat of foreclosure, while the appeal was undetermined, defendants paid $250 on the mortgage debt. The effect of the payment was to reduce the mortgage lien to that extent. Upon the affirmance of the decree from which the appeal had been taken, the title

to the mortgaged land being thus finally restored to plain-
tiffs, the payment inured to their benefit.    It follows that
this item was properly allowed as a credit in favor of de-
fendants.

If the position of plaintiffs is correctly understood, they
assert the right to recover in the present case $1,000, the
difference between the consideration of $5,000 for the can-
celed deeds and the mortgage by which defendants wrong-
fully incumbered plaintiffs' farm to the extent of $6,000.
This item was the subject of litigation in the former suit
in equity.    In that case the trial court, instead of canceling
the mortgage, or ordering defendants to pay the mortgage
debt, or entering judgment against defendants for the
amount of the lien, directed plaintiffs to pay into court
to apply on the mortgage the $5,000 paid by Frank Palmer
for the canceled deeds.    There was a compliance with this
order and the decree was affirmed by the supreme court as
rendered, though plaintiffs took a cross-appeal.    The ques-
tion now presented, therefore, was determined in the
former suit and cannot be relitigated; nor can any error
in the affirmed judgment be reviewed or corrected in this
proceeding.

Complaint is made because defendants were allowed
credit for payment of taxes, of interest on the mortgage
debt and of expenses of improvements and repairs.    Credits
for such payments as defendants made after the deeds
were canceled, pending a review of the decree, are justified
as a condition of the allowance in favor of plaintiffs for
rents during the same period.    No substantial error in
these respects has been pointed out or observed.

The rejection of plaintiff's claim for a share of the rents
of the urban property was proper.

Did the trial court err in disallowing plaintiffs' claim
of $1,400 for rents of the farm for the years 1907 and
1908?    This part of the claim for rent is without merit
and it was properly disallowed.    Plaintiffs themselves
pleaded that defendants procured the canceled deeds in
January, 1909, and shortly thereafter went into possession

of the land.   It is not shown that defendants had a lease.
The petition, however, contains a conclusion that defend-
ants fraudulently received and appropriated all the rents
and income for the years 1907 and 1908, but facts showing
how they procured the rents before they acquired title
while they were not in possession, or how the cheating
was done, are not pleaded. The widow of John Toop owned
the life estate and lived until November 9, 1907.   How she
lost the rents for the previous months of that year, how
plaintiffs acquired her right to them, and how defendants
by fraud and conspiracy cheated plaintiffs out of them are
not pleaded in a form to support a judgment.   Beside,
plaintiff sued for these rents in the former proceeding to
cancel the deeds.   The claim therefor was not allowed. The
judgment in that case was affirmed in the supreme court.

One phase of the controversy grew out of the following
circumstances:   In the former suit in equity the trial
court canceled the deeds from plaintiffs to Frank Palmer.
The latter had paid $5,000 for the land and he and his as-
sociates caused it to be mortgaged for $6,000.   Defendants
had title to the land and plaintiffs had $5,000 of defend-
ants' money.   In this situation the trial court in canceling
the deeds ordered plaintiffs to pay defendants' money into
court to apply on the mortgage.   Under an arrangement
not confided to defendants, plaintiffs received interest
pending the appeal to the extent of $583.33 on the $5,000
after they deposited the money in court.   The trial judge
in the present case credited on the rents due from defend-
ants the interest collected by plaintiffs on the deposit. The
allowance of this credit is vehemently assailed by plain-
tiffs.   There was no error in this respect.   Plaintiffs are
in the attitude of claiming at the same time both the use
of the land and the use of the purchase money received by
them for the land.   The farm belonged to plaintiffs and the
deposit belonged to defendants.   Plaintiffs were not en-
titled to both the use of the land and the use of the money.
Interest was paid by a bank for the use of the money just
as a tenant paid rent for the use of the farm.   The super-

seding of the decree canceling the deeds prevented plaintiffs from getting immediate possession of their land and delayed acceptance of the deposit by defendants. Plaintiffs having arranged for and accepted interest on defendants' money under the circumstances were answerable in equity therefor as a condition of obtaining the rents.

It is finally insisted that the trial court erred in denying the right of plaintiffs to recover as elements of damage the expenses of the suit to cancel the deeds. The items under this head consist of $900 for expenses incurred in litigation and $4,500 for attorneys' fees. Plaintiffs take the position that these items were necessary expenses of restoring the legal title acquired by defendants through fraud and that the loss is recoverable in the present suit. The position is clearly untenable. The issues in the former litigation presented questions over which litigants, counsel and the courts entertained different views. Whether an interest in the farm land escheated to the state, whether plaintiffs' alien kin inherited an interest, and whether the conduct of defendants amounted to actionable fraud were all questions open to reasonable controversy. Defendants are not wholly responsible for the litigation. They had a right to negotiate for the title. What they could not legally do was to perpetrate a fraud. Whether they did so was at first doubtful. Plaintiffs, without advice, or sufficient inquiry to ascertain their rights, carelessly deeded away their land for less than its value. When they brought their suit to cancel their deeds some of their demands for relief were unfounded and they thus increased the burden of litigation. There is no statute authorizing a recovery for the expense of litigation under such circumstances and the general rule of law is to the contrary. An expense of that kind is not an actionable consequence of the fraud pleaded and is not regarded as compensatory damage under former decisions.

AFFIRMED.