**LANDSTROM et al. v. THORPE et al.**

No. 14224.

United States Court of Appeals
Eighth Circuit.

May 4, 1951.

19. State of Georgia v. City of Chattanooga, 1924, 264 U.S. 472, 483, 44 S.Ct. 369, 68 L.Ed. 796.

Julius Skaug, Mobridge, S. D. (H. F. Fellows, Rapid City, S. D., and Pat Morrison, Mobridge, S. D., were with him on the brief) for appellants.

R. E. Driscoll, Jr., Rapid City, S. D., and Holton Davenport, Sioux Falls, S. D., for appellees.

Before GARDNER, Chief Judge, and THOMAS and RIDDICK, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal by the defendants from a judgment for the plaintiffs entered upon the verdict of a jury for $15,000 actual damage and $10,000 exemplary damage. The complaint was in one count. Damages were demanded for wrongful registration of the trade-mark "Black Hills Gold", and for unfair competition. Defendants' motion for a directed verdict was overruled.

The plaintiffs are doing business as a partnership under the firm name of F. L. Thorpe & Co. The defendants are also a partnership under the name Black Hills Jewelry Co. All the parties were and are citizens of the state of South Dakota.

For several years prior to this litigation and until the present time the parties hereto and others in the Black Hills region of South Dakota have manufactured and sold in interstate commerce and locally jewelry made of gold produced in the Black Hills and elsewhere under trade names such as Black Hills Gold, Black Hills Native Gold, Black Hills Jewelry, Black Hills Gold Jewelry, and others.

On March 4, 1947, the defendant Ivan E. Landstrom procured the registration of the trade-mark "Black Hills Gold", having on February 13, 1946, executed and filed in the Department of Commerce, United States Patent Office, a "Declaration" reading:

"Ivan E. Landstrom, being duly sworn, deposes and says that he is the applicant named in the foregoing statement; that he believes said statement is true; that he believes himself to be the owner of the trade-mark sought to be registered; that no other person, firm, corporation, or association, to the best of his knowledge and belief, has the right to use said trade-mark in the United States, either in the identical form or in any such near resemblance thereto as might be calculated to deceive; that said trade-mark is used by him in commerce among the several states of the United States: * * *."

On September 9, 1947, defendants sent a letter to 438 of their customers, 109 of whom were also customers of the plaintiffs, reading in essential part:

"Gentlemen:

"It is with a great deal of pleasure that we inform you at this time that the name 'Black Hills Gold' is now a registered trade mark bearing number 428039 in the United States Patent Office.

"From now on every piece of jewelry manufactured by our firm will bear the trade-mark 'Black Hills Gold' and will be easily identifiable by you. * * * Although there are several firms making merchandise similar to ours, we are the only rightful users of the name 'Black Hills Gold', and any other dealer marking his product with this trade-mark will be punishable according to law."

Thereafter, in October, 1947, the plaintiffs made application for the cancellation of the registration of the trade-mark on the ground that plaintiffs had used the trade-mark in their business since 1919; that plaintiffs had used it in interstate commerce since 1932; that their business had been affected by defendants' use of the trade-mark. The Commissioner of Patents ordered the cancellation of the registration on April 4, 1949, on the ground that the Declaration, supra, filed by Ivan E. Landstrom was false and fraudulent. This suit followed.

Jurisdiction is predicated upon 15 U.S.C. A. §§ 1120–1121, and 28 U.S.C.A. § 1338(b).

In their amended complaint the plaintiffs, after setting out in detail the foregoing facts, alleged that such facts were all a part of a wrongful scheme by fraudulent methods to disrupt the business of the plaintiffs and thereby wrongfully to acquire their business; that the first step in such scheme was the wrongful and fraudulent securing of the registration of the trade-mark "Black Hills Gold" in the Patent Office; that the second step was the extensive advertising

campaign of the defendants including the letter of September 9, 1947, supra; and that the third step consisted of the circulation throughout the jewelry trade of propaganda similar to the letter of September 9th.

Damages were demanded (1) in the sum of $5,000 for expenses incurred in procuring the cancellation of the registration of defendants' trade-mark in the United States Patent Office; (2) $100,000 for injury to the plaintiffs' business and reputation in the jewelry business and the burden of their efforts to counteract defendants' wrongful propaganda; and (3) for $50,000 exemplary damages.

The defendants admitted that they constituted a partnership doing business under the name Black Hills Jewelry Mfg. Co.; alleged that the complaint fails to state a claim upon which relief can be granted; and denied all other allegations of the complaint.

On appeal the defendants contend (1) that the court did not have jurisdiction, (2) that the court erred in certain instructions to the jury, (3) in the admission of evidence, (4) in denying defendants' motion to strike plaintiffs' claim for attorney fees, and (5) in denying defendants' motions for a directed verdict.

This is a non-diversity case, and the defendants contend that the district court did not have jurisdiction in such a case "because the complaint alleges upon two separate unrelated claims, (1) for damages for wrongful registration of a trade-mark based upon 15 U.S.C.A. § 1120, and (2) a claim for damages for unfair competition based upon disparagement of title, a common law tort not actionable under federal law, * * *" except in diversity cases.

The statutes involved are:

15 U.S.C.A. § 1120: "Any person who shall procure registration in the Patent Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof."

15 U.S.C.A. § 1121: "The district and territorial courts of the United States shall have original jurisdiction, the circuit courts of appeal of the United States and the United States Court of Appeals for the District of Columbia shall have appellate jurisdiction, of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties."

28 U.S.C.A. § 1338(b): "The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trade-mark laws."

Defendants concede that the complaint sets out a cause of action for damages "sustained in consequence" of the wrongful registration of the trade-mark "Black Hills Gold" under § 1120, supra, and that the proof is substantially as alleged in so far as such proof may affect jurisdiction, but that the claims for damages to plaintiffs' business and reputation and for exemplary damages constitute a claim for unfair competition wholly unrelated to the claim for wrongful registration; in short, that such alleged damages were not "sustained in consequence" of the wrongful registration, but that the proof is directed to the effect of the letter of September 9, 1947, sent by the defendants to their customers including 109 of plaintiffs' customers.

The merit of this contention depends upon the proper construction and application of §§ 1120 and 1338(b), supra.

We think that § 1120 means that any person who procures registration of a trade-mark by a false declaration is liable in a civil action in the federal court to any person injured by the trade-mark "for any damages sustained in consequence thereof", that is, resulting from the use of the "mark" while falsely registered, and not an injury resulting from the false declaration solely. Webster's New International Dictionary defines "consequence" as "That which follows something on which it depends; * * Chain of causes and effects; * * * relation of an effect to a cause." In 15 C.J.S., Consequence, page 982, it is said: "When an event is followed in natural sequence by a result which it is adapted to produce, or

aid in producing, that result is a consequence of the event." See, also, Orient Mutual Ins. Co. v. Adams, 123 U.S. 67, 74, 8 S.Ct. 68, 31 L.Ed. 63; Zalkind v. Scheinman, 2 Cir., 139 F.2d 895; Kaplan v. Helenhart Novelty Corporation, 2 Cir., 182 F.2d 311, 312. The false declaration induced a fraudulent registration and the defendants were liable in a civil action for any damages resulting therefrom.

■ The claim for damages for unfair competition could be asserted in the same action, however, under § 1338(b), supra, provided it were "joined with a substantial and related claim under the * * * trade-mark laws." This is true because the claim for damages for unfair competition is a common law cause of action and not a federal cause. For such a claim to be "related" to a case arising under the trade-mark law within the meaning of the statute "it must appear that both federal and non-federal causes [of action] rest upon substantially identical facts." French Renovating Co. v. Ray Renovating Co., 6 Cir., 170 F.2d 945, 947; Hurn v. Oursler, 289 U.S. 238, 248, 53 S.Ct. 586, 77 L.Ed. 1148; Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 325, 59 S.Ct. 191, 83 L.Ed. 195; Kaplan v. Helenhart Novelty Corporation, 2 Cir., 182 F.2d 311; Hanson v. Triangle Publications, Inc., 8 Cir., 163 F.2d 74, certiorari denied, 332 U.S. 855, 68 S.Ct. 387, 92 L.Ed. 424.

■ Damages resulting from the wrongful registration of the trade-mark and for unfair competition must necessarily be proven by the same evidence. It follows that the district court had jurisdiction of both claims.

The defendants next complain that the court erred in instructing the jury that if the jury found that the letter of September 9, 1947, which defendants sent out to jewelry dealers was intended to create the impression that the plaintiffs were illegally using a trade name which included the words "Black Hills Gold", and that the letter was such as to create that impression upon a reasonable mind, it would follow that this was defamation having a direct tendency to injure plaintiffs in "their business"; in short, that the letter was defamatory and actionable per se and that damages in a reasonable amount to be determined by the jury is presumed in law. The defendants excepted to the instruction.

The sending of the letter was an element of unfair competition charged in the complaint. It declared that the name Black Hills Gold was then a registered trade-mark; that defendants "are the only rightful users of the name"; and that "any other dealer marking his product with this trade-mark will be punishable according to law." At that time the trade-mark had not been cancelled although it was cancelled later because its registration had been procured by a false declaration. No dealers in jewelry were named in the letter. However, the defendants knew that the plaintiffs were competitors. Nothing was said derogatory of the quality of any competitor's products.

■ Defendants contend that the letter is neither defamatory nor libelous; that it did contain what was formerly known as slander of title but is now usually called disparagement of title. Slander of title has been defined as "a false and malicious statement, oral or written, made in disparagement of a person's title to real or personal property, or some property right of his." American and English Encyclopedia of Law. See, also, 3 Restatement, Torts, ch. 28, §§ 626 to 652, where it is said: "The damages recoverable are restricted to the financial loss which but for the disparaging statements would have been made to known or unknown purchasers." In Hardin Oil Co. v. Spencer, 205 Ky. 842, 266 S.W. 654, 655, the court say: " * * * an action [for slander of title] is not one for words spoken, but * * * for special damages for the losses sustained by reason of the speaking and publication of the slander of a plaintiff's title." See, also, Fearon v. Fodera, 169 Cal. 370, 148 P. 200, 202, Ann.Cas. 1916D, 312; Eversharp, Inc., v. Pal Blade Co., 2 Cir., 182 F.2d 779; Victor Safe & Lock Co. v. Deright, 8 Cir., 147 F. 211.

■■ We have said above that the letter in question does not in any way disparage the quality of the jewelry manufactured and sold by the plaintiffs. It is not there-

fore libelous or defamatory per se. Extrinsic proof is necessary to establish injury. In Eric Bowman Remedy Co. v. Jenen Salsbery Laboratories, 8 Cir., 17 F.2d 255, 257, this court, citing many authorities, said:.. "* * * words which upon their face, and without the aid of extrinsic proof, are injurious, are libelous per se; but if the injurious character of the words appear, not from their face, in their usual and natural signification, but only in consequence of extrinsic circumstances, they are not libelous per se." This language was repeated with approval in National Refining Co. v. Benzo Gas Motor Fuel Co., 8 Cir., 20 F.2d 763, 771.

The foregoing cases, and many others, also hold that "Language which * * * does not, as a necessary consequence, occasion damage to the party published, is not per se libelous, and in such cases a right of action exists only when, as a necessary and proximate consequence of the publication, special damage ensued to the party published." Townshend, Slander and Libel (4th Ed.) § 147. In this case special damages were neither pleaded nor proved. Under these authorities, and many others, the instruction given by the court was erroneous.

It is plaintiffs' contention on this point that the case is controlled by the law of South Dakota under the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; and that under § 47.0502 of the South Dakota Code of 1939, and the decisions of the Supreme Court of South Dakota in Barron v. Smith, 19 S.D. 50, 101 N.W. 1105; Sherin v. Eastwood, 27 S.D. 312, 131 N.W. 287, and others, it is unnecessary to plead and prove damage in such a case, that "damage is presumed." This doctrine is not applicable here. Jurisdiction of the federal court is dependent solely on federal law—the Trade-Mark Act, and not upon diversity of citizenship of the parties. As said in Philco Corporation v. Phillips Mfg. Co., 7 Cir., 133 F.2d 663, 672, 148 A.L.R. 125, an action for trade-mark infringement: "It goes without saying that plaintiff has no action for common law trade-mark infringement under State Law. Registration of plaintiff's trade-mark ren-

dered all questions concerning its use and protection in interstate commerce questions of federal law, and federal law is supreme." And, see the concurring opinion of Mr. Justice Jackson in D'Oench, Duhme & Co., Inc., v. Federal Deposit Insurance Corporation, 315 U.S. 447, 465, et seq., 62 S.Ct. 676, 86 L.Ed. 956; Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165; Watkins v. Oaklawn Jockey Club, 8 Cir., 183 F.2d 440.

It is next contended that the court erred in instructing the jury that plaintiffs were entitled to exemplary damages. The instruction complained of reads:

"In addition to other damages asserted, the plaintiffs also in this case ask exemplary damages in the amount of Fifty Thousand Dollars. Exemplary damages would be allowed, as applied to this case, only if you find that the defendants acted in the matters here involved with malice toward the plaintiffs. If you find there was such malice and that the plaintiffs are entitled to recover, you may, in addition to other damages, award to the plaintiffs such additional amount that you consider reasonable and fair, and which would serve as an example to others but in no event, exceeding the sum of Fifty Thousand Dollars."

The plaintiffs' contention is that this instruction is correct because it is authorized by South Dakota law. The instruction is consistent with § 37.1902 of the South Dakota Code of 1939. We have shown, supra, that since this is not a diversity case the rights of the parties are controlled by federal and not by state law. If, therefore, exemplary damages are recoverable in this case it must be because they were "sustained in consequence" of the wrongful registration in the Patent Office of the trade-mark "Black Hills Gold." We have discussed the meaning of the word "consequence" as used in the statute, § 1120, supra. Exemplary damages are not included. Exemplary damages are not the direct and proximate result or effect of such wrongful registration. This statute differs materially from the statute, 15 U.S. C.A. § 1117, which provides for recovery of triple damages within the discretion of the court for infringement of a registered

trade-mark. The statute under which this action was brought limits recovery from the wrongdoer to damages "sustained in consequence" of the wrongful registration of the trade-mark. It does not authorize a court or jury to punish him as an example to others. The court, therefore, erred in so instructing the jury.

The defendants contend further that the court erred in admitting evidence of what customers and prospective customers of plaintiffs told plaintiffs' salesmen regarding the effect upon such customers of the letter of September 9, 1947, supra. Clyde J. Bleavins, a traveling salesman of the plaintiffs soliciting orders for plaintiffs' jewelry, was called as a witness. He testified that in 1948 he called on 41 customers from whom he had taken orders the preceding year. He was then asked:

"Q. From how many of those on whom you called did you get a mention of this letter?

"Mr. Morrison: This is objected to as hearsay * * * immaterial * * *

"The Court: The objection is overruled.

"A. At least fifty per cent of them, I would say."

Further questions elicited the information that he received ten reorders on that second trip. The court overruled objections holding that the evidence had no probative value.

Bleavins testified further that he called on the manager of the Fairmont Jewelers in San Francisco and that he mentioned the letter. Subject to the same objection he was asked and answered:

"Q. What did he say? A. Well, when I came into his store * * * He said I am surprised to see you. Landstrom's salesman told me that you people would no longer be in business."

Mr. Morrison moved to strike the answer on the ground that it was not within the issues.

"The Court: * * * The question is competent; he is relating a conversation. Objection overruled.

"Q. Go ahead. A. And he said we have received a letter or a circular from the Landstrom company. My understanding is that you people are not authorized * * to use the name 'Black Hills Gold.'"

Other salesmen for the plaintiffs testified to their experiences when they called upon customers; that customers mentioned that they had received and read the letter; that in some instances no orders were received and that there was sales resistance from the dealers.

One of the important issues in this case was the circulation of the letter in question and its effect upon plaintiffs' customers. It was proper to show by plaintiffs' salesmen that they learned from customers upon whom they called that such customers had received or had seen copies of the letter and that they refused to renew their orders, and that they met with sales resistance from those who had read the letter. Conversations not limited strictly to the issue were hearsay and should not be received in evidence over proper objections. Hubbard v. Allyn, 200 Mass. 166, 86 N.E. 356. The limitations to the admission of this class of evidence must rest largely in the sound discretion of the trial judge. He should carefully limit it, however, to the issues on trial. Salem News Pub. Co. v. Caliga, 1 Cir., 144 F. 965; United States v. Hiss, 2 Cir., 185 F.2d 822. The impression made on the minds of third persons, not jewelry dealers, is of course incompetent.

We find no reversible error on this point.

The plaintiffs' evidence showed that they expended the sum of $4,434.82 in the proceeding to cancel defendants' trade-mark in the Patent Office. The court instructed the jury that "If * * * you find that the registration proceeding was maliciously prosecuted by the defendants, then the plaintiffs * * * would be entitled to recover all expenses which they reasonably incurred, including attorney's fees, in having such registration set aside, * * *." The defendants had moved to strike such claim from the complaint, had objected to the evidence to support it, and had moved to eliminate it from the consideration of the jury. Denial of all these objections is assigned as error.

The proceeding brought by the plaintiffs in the Patent Office was based on the same wrongful act, that is, the false declaration filed in the Patent Office, upon which this suit for damages is based. The defendants invoke the rules (1) that costs and attorney's fees allowable as damages are statutory, that unless the statute so provides they may not be recovered as damages, and (2) that when an action based on the same wrongful act has been prosecuted by the plaintiffs to a successful issue, they cannot in a subsequent action recover, as damages, their costs and expenses in the former action. Both these contentions are supported by the decision of the Supreme Court of Illinois in Ritter v. Ritter, 381 Ill. 549, 46 N.E.2d 41. And see 25 C.J.S., Damages, § 50. The plaintiffs justify the instructions and rulings of the court on the ground that the proceeding in the Patent Office to procure the registration of the trade-mark was an instance of malicious prosecution, and that in such a situation under the law of South Dakota the successful defendant in such a case may recover his attorney fees.

■ The answer to these contentions must be found in the construction and application of 15 U.S.C.A. § 1120. Were the attorney fees and expenses of the plaintiffs incurred in the proceeding instituted by it in the Patent Office "damages sustained in consequence" of the wrongful registration of the trade-mark? We think not. The proceeding to cancel the registration was not commenced by the defendants, and it was not an essential condition precedent to the present action of the plaintiffs for damages for the wrongful registration. As an element of damages in the present case it was remote—not the direct and proximate result of the wrongful registration. It was not, therefore, a proper element of damages, and the court erred in submitting it to the jury. No statute provides for the payment of such expenses. Toop v. Palmer, 108 Neb. 850, 189 N.W. 394, 397. There is no federal statute authorizing a recovery for the expenses so incurred. Stickney v. Goward, 161 Minn. 457, 201 N. W. 630, 39 A.L.R. 1216.

Finally the defendants contend that the court erred in overruling their motion for a directed verdict. We have considered above some of the points covered by the motion. In brief, the motion alleges: 1. There are no special damages alleged in the complaint upon which recovery could be had; 2. There is no competent evidence and nothing except speculation and conjecture from which the jury could establish any damage alleged in the complaint; 3. Any cause of action for damages by reason of the circulation of the letter of September 9, 1947, is not a damage in consequence of a false and fraudulent registration under the statute; 4. The evidence shows only a decrease in sales; 5. The loss of business is no measure of damage and has not been proven except through conjecture, guesswork and speculation—no evidence upon which the jury could consider the existence or amount of damages.

The complaint alleged that as the proximate result of defendants' wrongful registration of the trade-mark and the acts of unfair competition consisting of propaganda and the circulation of the letter of September 9, 1947, among plaintiffs' customers the plaintiffs have been damaged as follows: " * * * Second, in injury to the said business of the Plaintiffs in said sale of jewelry under said trade name or trade names made chiefly of the words 'Black Hills Gold'; in injury to the reputation and standing of the Plaintiffs in the jewelry and allied trades as a reputable business house pursuing legitimate and ethical business methods, and in the burden of extensive efforts on the part of the plaintiffs, their servants and agents to counteract and meet said wrongful propaganda * * * " all "in the sum of One Hundred Thousand Dollars ($100,000.00)."

■ In passing upon the motion for a directed verdict the district court was required to view the evidence and all inferences reasonably to be drawn therefrom in the light most favorable to the plaintiff. Brinegar v. Green, 8 Cir., 117 F.2d 316, 319.

To prove damages Mr. Morris F. Anderson, a certified public accountant, testified that under the direction of plaintiffs' attorneys he had examined plaintiffs' books and records for the years 1946, 1947, 1948,

and 1949, and that he had made an analysis of them. His exhibit 41, an analysis of the sales during those years to the 109 customers of plaintiffs to whom the defendants had sent the letter of September 9, 1947, is set out in the footnote.[1]

Exhibit 42, also prepared by Mr. Anderson, is a comparative table of sales (wholesale) for the years 1946–1949 to the circularized and uncircularized customers of the plaintiffs.[2]

The 109 customers of plaintiffs receiving the letters are referred to as the circularized customers; 208 names were on the uncircularized list, some of whom may have become customers after the date on which the letter was sent out. There is no explanation of the difference in total sales to the circularized customers for the years covered as shown on Exhibits 41 and 42.

The witness Anderson further testified: "I have made a computation of the net profit [for the years 1947, 1948, and 1949], as near as I can determine it, in the wholesale sales. The percentage of the sales that represent profits is approximately 30 per cent."

The only direct evidence of loss of sales to any particular customers is in the testimony of Charles W. Waters, general manager of the plaintiffs. He was asked and answered as follows: "Q. Now can you give the name or address of a single customer whom you lost sales to by reason of Landstrom's registration of the trade-mark and by reason of the letter which he circularized? A. It was reported to me by our salesman, Mr. Nordahl, over in Breckenridge, Minnesota, and Kuschler's, in Stockton, California. * * * That was reported to me, yes."

[20] We have found, supra, that since the letter of September 9, 1947, sent to 109 of plaintiffs' customers and to other jewelry dealers in its trade territory was not defamatory per se, therefore, damages are not presumed. Special damages only may be recovered in an action for unfair competition. In Erick Bowman Remedy Co. v. Jensen Salsbery Laboratories, supra, 17 F. 2d at page 259, this court said: "Where the words are not actionable per se, but become so by reason of some special damage occasioned by them, such special damage must be particularly averred." See, also, Burlington Transp. Co. v. Josephson, 8 Cir., 153 F.2d 372; Rule 9(g), Federal Rules of Civil Procedure, 28 U.S.C.A. And the court quoted with approval the rule laid down in Odgers on Libel and Slander (5th Ed.) page 383, as follows:

"Special damage must always be explic-

**1. Exhibit 41.**     Table of Sales (Wholesale) 1946–1949

| | Circularized Customers | | |
| Year | Total Sales | Decrease from 1946 | Percentage of Decrease |
| --- | --- | --- | --- |
| 1946 | $88,815.54 | | |
| 1947 | 63,254.39 | $25,561.15 | 28.78% |
| 1948 | 48,179.87 | 40,635.67 | 45.75% |
| 1949 | 30,889.92 | 57,925.62 | 65.22% |

**2. Exhibit 42.**     Uncircularized Customers

| Year | Total Sales | Increase over 1946 | Percentage of such Increase |
| --- | --- | --- | --- |
| 1946 | $ 87,285.95 | | |
| 1947 | 123,836.63 | $36,550.88 | 41.88% |
| 1948 | 127,200.17 | 39,914.42 | 45.74% |
| 1949 | 85,139.22 | 2,146.63 (decrease) | 2.46% (decrease) |

| | Circularized Customers | | |
| Year | Total Sales | Decrease from 1946 | Percentage of such Decrease |
| --- | --- | --- | --- |
| 1946 | $88,815.54 | | |
| 1947 | 66,997.38 | $21,818.16 | 23.89% |
| 1948 | 62,829.61 | 25,985.93 | 29.65% |
| 1949 | 39,175.24 | 49,640.30 | 55.89% |

itly claimed and particulars given on the pleadings. It must be alleged with certainty and precision. If the plaintiff relies on the loss of particular customers, he must set out their names in the statement of claim. If he relies on a diminution in the profits of his business, he must state on his pleading the fact that he has lost profits, showing by figures how much he alleges he has lost."

This court then pointed out that the foregoing rule is relaxed when the individuals may be supposed to be unknown to the plaintiff, or where it is impossible to specify them, or where they are so numerous as to excuse specific description on the score of inconvenience (citing authorities). The court then concluded:

"In the case at bar, the allegations of damage were clearly insufficient to admit proof and sustain a recovery for the loss of particular customers. The complaint did not allege the name of any particular person who withdrew or withheld his custom. They were likewise insufficient to admit proof and sustain a recovery for a general loss of business. The complaint did not allege a state of facts showing that it was impossible for plaintiff to allege and prove the loss of particular customers, it did not allege facts showing a general loss of business, and it did not allege facts showing that such diminution of profits was the direct and natural result of the publication. We therefore conclude that there was no sufficient allegation of special damages."

The foregoing is applicable to the present case. The plaintiffs relied upon the contention that the letter of September 9, 1947, was and is defamatory per se, and that general damages are presumed.

We are not disposed to overrule the decision in Erick Bowman Remedy Co. v. Jensen Salsbery Laboratories, supra. It follows that the judgment in this case must be reversed. We think, however, that if the plaintiffs so elect they should be permitted to amend their complaint and be given an opportunity in a new trial to prove special damages.

Reversed and remanded with directions to vacate the judgment appealed from; and the court is revested with juris-

diction and, to the end that justice may be done, is instructed to grant the plaintiffs a new trial, provided they elect within fifteen days to amend their complaint and to proceed in accordance with the law as laid down in this opinion. In case plaintiffs do not so elect the complaint will be dismissed with costs to the plaintiffs.