**ACADEMY AWARD PRODUCTS,**
**Inc., Plaintiff,**

**v.**

**BULOVA WATCH COMPANY, Inc., Defendant,**

**and**

**Elizabeth Stark and Esther Greenwald, as Executrices of the Estate of Max A. Schlesinger, Deceased, Defendants, made parties to respond to the Counterclaim herein.**

United States District Court,
S. D. New York.
March 8, 1955.

See also 90 F.Supp. 12.

Louis Zimmerman, New York City, Ephraim Berliner, Selma M. Lobsenz, New York City, of counsel, for plaintiff and executrices.

Byerly, Townsend & Watson, New York City, Ralph M. Watson, George Cohen, New York City, of counsel, for Bulova Watch Co., Inc.

DIMOCK, District Judge.

This action was originally brought by Academy Award Products, Inc., against Bulova Watch Company, Inc., hereinafter called Bulova. The complaint charged infringement by Bulova of plaintiff's registered trade-mark "Academy Award". Since the commencement of the action and by order dated December 14, 1951, plaintiff's registration of the trademark has been cancelled in a Patent Office proceeding as procured by a false application. The complaint has been dismissed with prejudice pursuant to stipulation and by order dated June 21, 1955. There remains for consideration only a counterclaim of Bulova against plaintiff and the executrices of plaintiff's president, Max A. Schlesinger, deceased, pursuant to section 38 of the Trade-Mark Act of 1946 (15 U.S.C. § 1120), for damages alleged to have been sustained in consequence of procurement of the trademark by a false and fraudulent declaration and representation. The damages sought consist exclusively of the attorneys' fees and disbursements incurred in connection with plaintiff's registration and in defense of this suit.

Plaintiff and the two Schlesinger executrices (all three of whom I shall refer to collectively as the Schlesinger group) contend (1) that section 38 does not authorize the recovery of attorneys' fees, (2) that any wrong committed was committed by Academy Award Products, Inc., so that its president, Schlesinger, was protected from liability by the corporate shield, (3) that any claim for damages against Schlesinger did not survive against his executrices, and (4) that Bulova does not come into court with clean hands since by Bulova's use of the words "Academy Award", it falsely represented that watches sold by Bulova had received an award for excellence from the Academy of Motion Picture Arts and Sciences of Hollywood, California.

The question of the right to counterclaim for damages arising from the defense of the suit in which the counterclaim is asserted, though not discussed by the parties, deserves notice. It may be that a claim which does not exist in its entirety at the beginning of the trial cannot be asserted by way of a counterclaim but should be reserved for a separate suit. See Alexander v. Petty, Del.Ch., 108 A.2d 575; Fender v. Ramsey & Phillips, 131 Ga. 440, 62 S.E. 527; Kenner v. Cousin, 163 La. 623, 624, 112 So. 508; Manufacturers & Jobbers Finance Corp. v. Lane, 221 N.C. 189, 19 S.E.2d 849; Forke v. Homann, 14 Tex. Civ.App. 670, 39 S.W. 210. Here, however, the question does not arise since the complaint had been withdrawn before the trial of the issue raised by the counterclaim. The claim asserted in the counterclaim was therefore mature and complete at the time of trial.

Schlesinger was a lawyer and self-styled merchant. He had caused the incorporation of plaintiff corporation un-

der the name of Champion Play Corporation. It was intended as a play bureau but never did any business. The officers and directors were Schlesinger, his secretary, and one Stark. Stark was employed as general manager of two other corporations operated by Schlesinger and received his sole compensation from them.

On February 7, 1946, Champion Play Corporation's name was changed to Academy Award Products, Inc., pursuant to a certificate of change of name signed by Schlesinger and his attorney.

On April 17 and 18. 1946, Academy Award Products, Inc., filed seventeen applications for registration of the trademark "Academy Award". Each application contained the false sworn statement of Schlesinger's secretary to the effect that the trade-mark was used by the corporation in connection with the goods therein described. One of these applications described watches and clocks and horological instruments. The rest described goods of an almost limitless range: heating and ventilating apparatus, cigarette lighters, copper, iron, steel, magnesium, silver, gold, washing and drying machines, locks, brushes, umbrellas, refrigerators, furniture, smokers' articles, smoking tobacco, cigars, cigarettes, jewelry, silverware, gems, explosives, fire arms, projectiles, stoves, radio and television receivers, tires, glassware, cutlery, tools, etc.

These applications were executed by Schlesinger's secretary pursuant to instructions from Schlesinger or his then attorney. On examination she said that she did not even know whether or not she was a director of plaintiff, knew nothing about its business and had never received any compensation from it. The other director and officer of plaintiff, Stark, said that he was totally unfamiliar with plaintiff's business and did not know whether or not it had any. In short it was obvious that they were acting as Schlesinger's dummies.

On March 28, 1950, Academy Award Products, Inc., began this action alleging infringement of its watch trade-mark by Bulova.

I find that Schlesinger changed the name of plaintiff corporation to Academy Award Products, Inc., and procured the unauthorized registration of the trade-mark Academy Award with the purpose of harassing others who were then making or might thereafter make legitimate use of those words in business. I further find that Schlesinger, with the same purpose, instituted this action against Bulova.

The statute under which Bulova seeks damages against the Schlesinger group is section 38 of the Trade-Mark Act of 1946 (15 U.S.C. § 1120) which provides as follows:

"Any person who shall procure registration in the Patent Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof."

I understand the Schlesinger group to contend that, in no circumstances, can attorneys' fees and disbursements be recovered under this statute. As authority for this position they cite Landstrom v. Thorpe, 8 Cir., 189 F.2d 46, 26 A.L.R. 2d 1170, certiorari denied 342 U.S. 819, 72 S.Ct. 37, 96 L.Ed. 620. There the court in discussing the statute said, 189 F.2d at page 50, that one who procures a registration by fraud is liable for damages "resulting from the use" of the trade-mark and not from "an injury resulting from the false declaration solely". I understand that it was to some extent upon that basis that the court there ruled out as damages the cost of a cancellation proceeding in the Patent Office. On page 54, the court added as to that, "The proceeding to cancel the registration was not commenced by the defendants, and it was not an essential condition precedent to the present action of the plaintiffs for damages for the wrongful registration."

The case at bar was commenced by Schlesinger's corporation and was an integral part of his plan to harass Bulova by means of the false registration. The fact that the damages that Bulova suffered consisted of the attorneys' fees and disbursements entailed in defense against this attack does not make them any the less "damages sustained in consequence" of the false registration.

It is true that the common law does not afford a right of recovery of damages for the malicious prosecution of a civil action except under special circumstances such as where an attachment is levied, Paul v. Fargo, 84 App.Div. 9, 82 N.Y.S. 369, but here a statute gives a right to damages sustained in consequence of a false registration and the person responsible for the false registration has deliberately set out to injure Bulova by means of a law suit based upon the false registration. The statute is obviously designed to give the injured party more than he would get at common law and it takes the case out of the malicious prosecution rule.

The Schlesinger group say that the omission from the Trade-Mark Act of 1946 of a provision for the payment of attorneys' fees to the prevailing party is deliberate and significant in the light of such provisions in the patent and copyright statutes, citing Philco Corporation v. F. & B. Mfg. Co., D.C.N.D.Ill. E.D., 86 F.Supp. 81, affirmed, 7 Cir., 170 F.2d 958, certiorari denied 336 U.S. 945, 69 S.Ct. 813, 93 L.Ed. 1102. Bulova does not contend, however, that attorneys' fees should be allowed in all cases to the prevailing party in suits under the Trade-Mark Act. It is not even seeking attorneys' fees for its prosecution of its counterclaim. What it does contend is that, where it is damaged to the extent of attorneys' fees by the prosecution of an action brought under the Trade-Mark Act as part of a plan to harass it by means of a false registration, section 38 permits the recovery of those damages. The omission of express authority for recovery of attorneys' fees in trade-mark actions is not fatal to Bulova's claim.

Next the Schlesinger group contends that any wrong committed was committed by Academy Award Products, Inc., so that its president, Schlesinger, was protected from liability by the corporate shield. Bulova's attempt to reach Schlesinger's estate here is not the ordinary attempt to disregard the corporation fiction. The facts show that Schlesinger, by means of a corporation which he used as an instrument of his will, injured Bulova. Under those circumstances the corporate shield affords no protection. General Electric Co. v. Wabash Appliance Corp., 2 Cir., 93 F.2d 671, 674; Floral Park Lawns, Inc., v. O'Connell (No. 2), 250 App.Div. 464, 294 N.Y.S. 991.

It is argued on behalf of the executrices that the claim against Schlesinger did not survive his death. They concede that the New York law is applicable. Section 118 of the New York Decedent Estate Law, Consol.Laws, c. 13, provides: "No cause of action for injury to person or property shall be lost because of the death of the person liable for the injury." It is contended that Bulova's claim under section 38 is not an "injury to * * * property" within this statutory class. This is incorrect. Under the present New York law all tort actions survive. Brown v. Mack, 185 Misc. 368, 56 N.Y.S.2d 910.

That brings me to the contention that Bulova is barred from recovery because it does not come into court with clean hands.

Bulova by payment to the Academy of Motion Picture Arts and Sciences of Hollywood, California, obtained the right to use in connection with the sale of watches the words "Academy Award" and a copyrighted symbol commonly known as the "Oscar". The "Oscar" is a statuette which, since 1929, has been granted annually by the Academy as an award of merit for outstanding films and performances in the motion picture industry. Those awards are generally known as "Academy Awards".

On October 21, 1952, a stipulation by Bulova to cease and desist from such use of the words "Academy Award" and the "Oscar" was approved by the Federal Trade Commission. This stipulation included a statement that it was the opinion of the Federal Trade Commission that Bulova, by its use of the words and symbol, had "represented directly or by implication that its * * * 'Academy Award Watches', after examination, testing and comparison with other watches, were awarded the 'Oscar' by the Academy of Motion Picture Arts and Sciences for special meritorious achievement as to quality, workmanship, design, timekeeping qualities and other desirable qualities and characteristics; whereas, the aforesaid 'Academy Award Watches' have not been examined, tested or compared with other watches nor awarded the 'Oscar' by Academy of Motion Picture Arts and Sciences for any meritorious achievements, but the term 'Academy Award' and the word 'Oscar' are permitted to be used solely on the basis of the monetary consideration provided for in the aforesaid contract entered into by and between Bulova Watch Company, Inc., and Academy of Motion Picture Arts and Sciences."

Evidence has been taken before me on the question whether Bulova's use of the term "Academy Award" and the "Oscar" has been such a fraud upon the public as to constitute a defense to Bulova's claim for reimbursement of the expense to which it has been put in vindicating its right to such use as against Academy Award Products, Inc.

The evidence submitted to me on the misrepresentation issue consisted largely of the printed advertising matter put out by Bulova. It must be admitted that the expression "Academy Award" and the "Oscar", by virtue of their source, afforded an opportunity for innuendoes to the general effect that Bulova had won them, yet I found nothing of the kind. Most of the advertisements introduced an almost pathetic note of "We have done some winning ourselves" by picturing

"The Fashion Academy Gold Medal, Awarded to Bulova for Outstanding Design". The effort of the copy writer in each case seems to have been to associate the watches with the glamour of the contest among the Hollywood stars rather than to suggest a contest between watches. In some of the publicity the "Oscar" is stated to be "presented each year to Academy Award winners—the Motion Picture Actor and Actress giving the Season's most outstanding performance". In some of the advertisements the statement is made that the "Oscar" is "reproduced by exclusive arrangement with the Academy of Motion Picture Arts and Sciences."

Whatever may be said for the Federal Trade Commission's opinion that Bulova represented that it had won the Academy Award and the Oscar in competition, I can find no evidence that any such representation was intentional. In the absence of intentional misrepresentation I cannot find a basis for holding that Bulova's conduct requires the court to close its doors to Bulova's suit for the damages sustained in consequence of plaintiff's procurement of the trade-mark by a false declaration. No one could object to Bulova's use of the term "Academy Award" and the "Oscar" so long as it was made clear that Bulova's right to use them was based on a licensing agreement rather than on an award in competition. Indeed such use was excepted from the "cease and desist" stipulation. Bulova surely had a right to defend that use when it was attacked by plaintiff on a basis of the false registration, and the expense to which Bulova was put in that defense is properly recoverable as damages sustained in consequence of the false registration.

I now pass to the question of the amount of damages. I hold that Bulova is not entitled to recover for fees paid to counsel for services rendered before Academy Award Products, Inc., brought this suit. What takes counsel fees in this case out of the usual non-recoverable status is the use by Academy Award

Products, Inc., of this suit as a means of employing the false registration to injure Bulova. Until the suit is brought the basis for recovery of attorneys' fees is non-existent.

Bulova paid to counsel of record for services in this case rendered prior to the cancellation of plaintiff's registration by the Patent Office the following:

| | |
|---|---|
| For services in March and April 1950 | $4,000. |
| " disbursements " " " " | 132.53 |
| " services in balance of 1950 | 1,750. |
| " disbursements " " " | 101.51 |
| " services in 1951 | 900. |
| " disbursements in 1951 | 278.97 |
| | $7,163.01 |

I find the sums paid to be reasonable in amount for services and disbursements necessarily required.

Bulova paid to its general counsel a retainer of $40,000 a year. I find that general counsel necessarily rendered services in connection with this litigation in the years 1950 and 1951 of the reasonable value of $1,000 and that Bulova paid that sum.

Part of the services rendered in 1950 and included in the above schedule of payments consisted of the preparation of the counterclaim for damages which I have been considering. Such services do not differ from those ordinarily rendered on behalf of a plaintiff in a law suit to recover damages to which the claimant is entitled. The payment made for them is therefore not recoverable. I find the services in connection with the preparation of the counterclaim to be of the reasonable value of $250 which sum I direct shall be deducted from the $8,163.01 paid for services rendered from March 1950 through 1951. The balance is $7,913.01.

Bulova is therefore awarded judgment in the sum of $7,913.01 against plaintiff Academy Award Products, Inc., and defendants Elizabeth Stark and Esther Greenwald as executrices.

If findings and conclusions other than those embodied in this memorandum are deemed desirable they may be submitted.