**DeMERT & DOUGHERTY, INC.,**
**Plaintiff,**

**v.**

**CHESEBROUGH–POND'S, INC.,**
**Defendant.**

**No. 72 C 650.**

United States District Court,
N. D. Illinois, E. D.

Oct. 2, 1972.

## MEMORANDUM OPINION and JUDGMENT ORDER

AUSTIN, District Judge.

Plaintiff seeks recovery of damages caused by defendant's allegedly false or fraudulent registration of a trademark with the Commissioner of Patents. Count I of the complaint asserts a federal right to recovery under 15 U.S.C. § 1120 (1970). Jurisdiction in Count I is based upon 15 U.S.C. § 1121 (1970) and 28 U.S.C. § 1338 (1971). Count II invokes this court's diversity jurisdiction to hear a related state claim based upon common law fraud. For the reasons discussed below, this court grants defendant's motion for summary judgment and dismisses the cause without costs.

■ Before proceeding to the merits, it should first be noted that this court is ruling today on defendant's motion to dismiss for failure to state a claim or in the alternative for summary judgment. Since both Counts of plaintiff's complaint allege facts, which if true would constitute a claim upon which relief could be granted, this court will treat defendant's motion as one for summary judgment and will consider the affidavits submitted by both parties. Fed.R. Civ.P. 12(b)(6), 56.

Plaintiff, DeMert & Dougherty, Inc. (hereinafter referred to as DeMert), is an Illinois corporation manufacturing a pressurized hair spray under the trademark STORMY WEATHER. In 1969 the Commissioner of Patents rejected DeMert's application to register STORMY WEATHER because that trademark was previously registered by defendant, Chesebrough-Pond's, Inc. (hereinafter referred to as Chesebrough). Chesebrough's registration application stated that it first used the trademark in interstate commerce on May 29, 1968. According to the affidavit of Chesebrough's Trademark Manager, the use to which the registration application referred consisted of three interstate "token shipments" of skin cream featuring the mark STORMY WEATHER. In addition, the sole pur-

pose of these shipments was admittedly to establish a use of the mark in commerce so as to satisfy federal registration requirements. The consignees were three drug stores, each of which paid cash subject to reimbursement upon return of the goods. Subsequent to its registration of the trademark, Chesebrough made two more token shipments of STORMY WEATHER skin cream, once in 1969 and once in 1970.

Upon learning of the Chesebrough registration, DeMert contacted the company's trademark counsel on several occasions and offered to acquire the registration; but all offers were rejected. Thereafter, DeMert instituted cancellation proceedings with the Commissioner of Patents, alleging that Chesebrough had abandoned its rights to STORMY WEATHER and that Chesebrough's registration was void *ab initio* because it was procured by a false or fraudulent declaration. DeMert's position before the Commissioner and before this court is that Chesebrough's statement regarding its use of the trademark in interstate commerce was false or fraudulent because token shipments do not constitute a bona fide use, as that term is defined in the statute. 15 U.S.C. § 1127 (1970). Chesebrough initially opposed the cancellation petition, but before a decision could be rendered on the merits, Chesebrough withdrew its opposition and filed a request to cancel its registration of the trademark, which was granted. However, Chesebrough declined a request to pay DeMert's attorney's fees and expenses related to the cancellation proceedings. Presumably it is these expenses and no others that DeMert seeks to recover in this lawsuit, for nowhere in its complaint, affidavits, or brief does DeMert allege or discuss a loss of profits or any other damages.

■ Count I of the complaint alleges that Chesebrough procured the registration of STORMY WEATHER by a false and fraudulent declaration. In order to register a trademark, the owner must file a written application in the Patent Office, which among other things states

"the date of the applicant's first use of the mark in commerce". 15 U.S.C. § 1051 (1970). A trademark on goods is considered to be used in commerce when it is placed on the goods or their containers in any manner and the goods are then sold or transported in commerce. 15 U.S.C. § 1127 (1970). Courts have interpreted this to mean at a minimum that the sale appear to be more than a mere sham, Li'l Red Barn, Inc. v. Red Barn System, Inc., 322 F.Supp. 98 (N. D.Ind.1970), or, stated alternatively, that the use be a bona fide business transaction. Phillips v. Hudnut, 49 App.D.C. 247, 263 F. 643 (1920). DeMert contends that Chesebrough's token shipments of STORMY WEATHER skin cream failed to satisfy the minimum statutory requirements, thus rendering false its declaration of the date of the first use of the mark in commerce. DeMert also contends that Chesebrough knew its declaration was false when made, rendering the declaration fraudulent as well. The right to recover damages in Count I is predicated upon 15 U.S.C. § 1120 (1970), which allows any person injured by a false or fraudulent application to recover "any damages sustained in consequence thereof."

■ Since the statute predicates civil liability upon a statement that is false *or* fraudulent, Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp., 158 F. Supp. 277 (D.N.J.1958), it is appropriate in ruling on a motion for summary judgment to examine the affidavits of the parties to determine whether there is a genuine issue of material fact under either theory of liability. Affidavits having been submitted, DeMert cannot rely simply upon its pleadings to show that there is a genuine issue of material fact, but rather must respond to Chesebrough's statements by counteraffidavit or as otherwise provided under Rule 56. Fed.R.Civ.Proc. 56(e). This is particularly relevant to DeMert's allegations of fraud in both the statutory theory of recovery under Count I and the common law claim asserted in Count II.

In his affidavit, Chesebrough's Trademark Manager states on page 3 that at the time of the token shipments of skin cream it was his belief "that such shipments were proper and sufficient to establish use of the mark in interstate commerce." Nowhere is this statement contradicted in DeMert's affidavit, nor is there any other factual indication that Chesebrough made these token shipments in bad faith. Moreover, a leading authority in the area of trademark law has stated, "While 'token' sales of the goods or services bearing the mark may be open to question, one is certainly better off to make such sales than to await a time when a full dress commercial usage can be commenced." E. Vandenburgh, Trademark Law and Procedure, 227 (2d ed. 1968). Even the Trademark Trial and Appeal Board has recognized this as "a common practice employed to secure a federal registration," Tudor Square Sportswear, Inc. v. Pop-Op Corp., 160 U.S.P.Q. 50, 55 (T.M.Bd. 1968), although it has reserved judgment on the validity of this practice in general and appears to decide the issue of authenticity on a case by case basis.[1] Thus, if Chesebrough's Trademark Manager states that he believed such sales were proper and if prominent legal authority recognizes this as a colorably valid practice to secure trademark registration, this court has no reason to believe that Chesebrough knowingly made a false statement when it declared that the token shipments constituted a use in commerce. Moreover, there is no genuine issue of material fact on this point because DeMert's affidavit fails to refute Chesebrough's contention that it believed such sales were proper. Hence, it is next appropriate to examine and resolve the legal issues related to the propriety of Chesebrough's belief.

In order for a declaration to be considered fraudulent, it is well established that the declarant must have made a false statement of fact with knowledge of the falsity at the time of the declaration. An action for fraud at common law further requires that the fact be material, that the declarant know or have good reason to know of reliance on his statement by another person, and that there was in fact such reliance, causing damages. Hanlon v. MacFadden Publications, Inc., 302 N.Y. 502, 99 N. E.2d 546, 24 A.L.R.2d 733; Roda v. Berko, 401 Ill. 335, 81 N.E.2d 912 (1948). A trademark registration applicant incurs civil liability under 15 U.S.C. § 1120 (1970) when he has made a declaration which was a "wilful attempt to mislead and injury has resulted as a consequence thereof." Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp., *supra*, 158 F.Supp. at 278. Since this court finds as a matter of uncontradicted fact that, at the time of filing, Chesebrough's statement about first using STORMY WEATHER in commerce on May 29, 1968 was made in good faith under the belief that token shipments are a proper way to establish usage under the statute, it is compelled to rule in Chesebrough's favor on the charges of fraud presented by Count I and Count II of the complaint. The remaining issue is whether DeMert can collect attorney's fees and other expenses related to the cancellation proceedings that were instituted in part on the theory that Chesebrough's registration application was false.

As indicated above, DeMert's theory of recovery is that Chesebrough's token shipments of May 29, 1968 were insufficient to constitute a bona fide use of the trademark STORMY WEATHER in commerce. Hence, Chesebrough's reliance upon those shipments in its registration application constituted the procurement of a trademark registration by means of a false declaration, for which civil liability is incurred under 15 U.S.C. § 1120 (1970). Whether a particular transaction or series of transactions is sufficient to constitute a bona fide use of a trademark in commerce has been the subject of much litigation, usually

1. See cases cited in note 2 *infra*.

arising in the contexts of infringement actions and cancellation proceedings. *See generally,* E. Vandenburgh, *supra* at 25–27. It is clear that the statute will be satisfied if there has been either a sale *or* a transportation of the trademarked goods in commerce. New England Duplicating Co. v. Mendes, 190 F.2d 415 (1st Cir. 1951). Furthermore, although there has been some hostility to the use of interstate transactions that were contrived specifically for the purpose of obtaining federal registration, the current state of the law is that an initial transaction can be made primarily for federal registration purposes provided that the registrant intends to continue using the mark in commerce.[2] But in order to dispose of this case it is not necessary to decide whether these particular token shipments were in fact a bona fide use in commerce, for DeMert is not entitled to the relief it seeks even if the shipments were a sham and the declaration of use in commerce false. This conclusion is supported by any one of three lines of authority.

First, Chesebrough calls this court's attention to Landstrom v. Thorpe, 189 F.2d 46 (8th Cir. 1951), cert. denied, 342 U.S. 819, 72 S.Ct. 37, 96 L.Ed. 620 (1951), which interpreted 15 U.S.C. § 1120 (1970) as allowing the recovery of only those damages that result from the *use* of the mark while falsely registered as opposed to those resulting from the false declaration alone. *Accord,* D.M. & Antique Import Corp. v. Royal Saxe

Corp., 311 F.Supp. 1261 (S.D.N.Y. 1970); Dresser Indus., Inc. v. Heraeus Engelhard Vacuum, Inc., 267 F.Supp. 963 (W.D.Pa.1967), aff'd, 395 F.2d 457 (3d Cir. 1968). The theory behind this line of authority is that the mere procurement of a registration by a false declaration does not give rise to civil liability under 15 U.S.C. § 1120 (1970) but that if a registrant takes substantial affirmative action to enforce its false registration, then it becomes liable for consequential damages. In the affidavit of its Trademark Manager, Chesebrough states that aside from opposing the cancellation petition of DeMert it has never affirmatively enforced its rights to STORMY WEATHER. This statement is uncontradicted by DeMert's affidavit. Therefore, there is no genuine issue of material fact on this matter and so this question is properly resolved on a motion for summary judgment. Since the recovery of attorney's fees and expenses related to cancellation proceedings was denied under similar circumstances in Landstrom v. Thorpe, *supra,* this court sees no reason to grant such relief in this case.

■ Were it not for the fact that this court finds reasonable grounds to question the *Landstrom* approach in view of the plain language of § 1120, this opinion could end here. However, there is some merit to DeMert's assertion that it is entitled to recover damages caused merely by a false registration, which is, realistically, a use of the

2. *Compare* Phillips v. Hudnut, *supra;* In re Beatrice Foods Co., 429 F.2d 466 (C.C.P.A.1970); State of Florida v. Real Juices, Inc., 330 F.Supp. 428 (M.D.Fla. 1971); Academy Award Prods., Inc. v. Bulova Watch Co., 90 F.Supp. 12 (S.D. N.Y.1950); Van Camp Sea Food Co. v. Universal Trading Corp., 138 U.S.P.Q. 323 (T.M.Bd.1963); Black Panther Co. v. Godfrey L. Cabot, Inc., 121 U.S.P.Q. 533 (T.M.Bd.1959); The Procter & Gamble Co. v. Jacqueline Cochran, Inc., 102 U.S.P.Q. 449 (Com.Pat.1954) *with* Mister Donut of America, Inc. v. Mr. Donut, Inc., 418 F.2d 838 (9th Cir. 1969); Drop Dead Co. v. S. C. Johnson & Son, Inc., 326 F.2d 87 (9th Cir. 1963), cert. denied,

377 U.S. 907, 84 S.Ct. 1167, 12 L.Ed.2d 177 (1964); Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538 (2d Cir. 1956); New England Duplicating Co. v. Mendes, *supra;* Fort Howard Paper Co. v. Kimberly-Clark Corp., 390 F.2d 1015, 55 CCPA 947 (1968); Montgomery Ward & Co. v. Sears Roebuck & Co., 49 F.2d 842 (C.C.P.A.1931); Li'l' Red Barn, Inc. v. Red Barn Systems, Inc., *supra;* Tudor Square Sportswear, Inc. v. Pop-Op Corp., *supra;* DCA Food Indus., Inc. v. General Mills, Inc., 159 U.S.P.Q. 733 (T.M.Bd.1968); Community of Roquefort v. Santo, 157 U.S. P.Q. 444 (T.M.Bd.1968).

trademark and the cause of DeMert's expenses in prosecuting the cancellation proceedings. Therefore, this court rests its decision in favor of Chesebrough on two other independent grounds. The first is that attorney's fees and related expenses have been awarded under 15 U.S.C. § 1120 (1970) only in those cases where the false registrant could have had no bona fide belief in the validity of his claim and consequently acted fraudulently. Merry Hull & Co. v. Hi-Line Co., 243 F.Supp. 45 (S.D.N.Y.1965); Academy Award Products, Inc. v. Bulova Watch Co., 129 F.Supp. 780 (S.D.N.Y. 1955), aff'd, 233 F.2d 449 (2d Cir. 1956). The final authority that could independently support the denial of relief in this suit is that the propriety of ever awarding attorney's fees in a trademark case, absent some affirmative statutory authority, is open to serious doubt by virtue of the Supreme Court's decision in Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 87 S. Ct. 1404, 18 L.Ed.2d 475 (1966).

DeMert has cited Merry Hull & Co. v. Hi-Line Co., *supra*, in support of its claim for attorney's fees and related expenses. The defendants in *Merry Hull* were able to recover such damages on a counterclaim to the plaintiff's infringement suits because the court found those "suits were filed by plaintiff to harass all the defendants and harm them in their business." 243 F.Supp. at 56. Moreover, the plaintiff made a false declaration in his registration application at a time when he knew the true facts. Thus, given the existence of a fraudulent declaration coupled with the purpose of harming the defendants' business through a lawsuit, the court awarded the fees incurred in defending the suits and prosecuting cancellation proceedings. Similarly, attorney's fees and related expenses were awarded in Academy Award Products, Inc. v. Bulova Watch Co., *supra*, when the court found that the plaintiff's lawsuit "was an inte-

gral part of his plan to harass Bulova by means of the false registration." 129 F.Supp. at 784. In contrast, the uncontradicted affidavit of Chesebrough's Trademark Manager states that he believed the token shipments to be proper under the law. Moreover, at least some support for this position comes from no less an authority than a leading scholar in the area of trademark law and the Trademark Trial and Appeal Board. Under these circumstances, therefore, an award of attorney's fees and related expenses is simply not justified.

Finally, consideration should be given to the effect upon this case of Fleischmann Distilling Corp. v. Maier Brewing Co., *supra*. DeMert properly points out that Fleischmann was an action brought under 15 U.S.C. § 1117 (1970) to recover counsel fees and related expenses arising out of trademark infringement litigation, while this case is brought under a different section of the statute to recover damages suffered in consequence of a false registration application. But, the reasoning of the Court in *Fleischmann* seems equally applicable here. Although the elements of recoverable damages in § 1120 are not specifically defined as they are in § 1117, it nevertheless remains clear that the recovery of attorney's fees in the United States has long been an exception to the general rule of nonrecovery in the absence of a statute or contract providing otherwise. Furthermore, as the *Fleischmann* Court notes 386 U.S. at 721, 87 S.Ct. 1404, 18 L.Ed.2d 475, several legislative attempts to allow recovery of counsel fees in trademark cases have failed, even though such fees are by statute allowed in patent cases. Thus, the award of counsel fees under § 1120 is open to reasonable question even when the plaintiff has knowingly procured a false registration. Therefore, for all the reasons noted above, this court directs summary judgment be entered in favor of defendant, Chesebrough-Pond's, Inc.